A. D. TURRENTINE and others *v.* A. L. WATSON and others.

## October Term, 1876.

RECONVEYANCE OF LAND — EFFECT ON THE CHARACTER OF THE HOLDING. — Whether a reconveyance of land to a person who held it originally by descent from the father amounts to a new purchase, or a reinvestiture as of the former estate, must depend on all the facts and circumstances of the particular case, and a demurrer to a bill for partition on one view will be overruled, in order that the facts may be fully brought before the court.

*G. B. Guild*, for complainants.
*C. D. Berry*, for defendants.

THE CHANCELLOR :— On October 30, 1865, Jane T. Watson, being the owner of a tract of land by descent from her father, conveyed the same to A. D. Turrentine. The considerations recited are the love and affection of the grantor to the grantee, " and a written agreement and obligation this day executed to me by said A. D. Turrentine, binding himself to take care of me during my natural life." The deed, in conclusion, also recites : " But I retain a lien on said real estate for the payment to me of a comfortable maintenance and support, as promised to me, during my life, by Archelaus D. Turrentine, and as set out in his contract to me of this date." The *habendum* is: " To have and to

hold the same to the said Archelaus D. Turrentine, his heirs and assigns forever, subject only to a right of possession and occupancy during my life." On the day of the date of this deed, Turrentine executed to the grantor an obligation binding himself to take care of her during her natural life. He went into immediate possession of the land, and performed his obligation for some time, when the grantor became dissatisfied with the arrangement, and proposed to him to discharge his obligation and make him a deed in fee to seventy acres of the land, if he would convey back to her the tract previously conveyed as aforesaid. The proposition was accepted, and on September 3, 1866, Turrentine reconveyed to the grantor " all my right, title, and claim, if any I have," of, in, and to the land, with covenant of special warranty, reciting a consideration of $5. This instrument contains the following clause : " The said Watson claims that the said deed to me is a nullity, and the object of this instrument is to reconvey all title and claim, if any I have, and conveying all the claim that I have, thus reinvesting her in all her former rights and estates." On the same day he acknowledged receipt of his obligation, and full satisfaction of all claims against her or her estate. And on the same day she conveyed to him by deed, reciting a consideration of $5, with convenant of special warranty, seventy acres of the land. Jane Watson has since died intestate, without issue, brothers or sisters, or father or mother surviving. The present bill is filed by the maternal uncles and aunts of the intestate, or their descendants, against the paternal uncles and aunts and their descendants, to set up their right to share the land with the latter, under our statute regulating the descent of realty.

The land having come to the intestate by descent from her father, will, it is clear and conceded, descend to the defendants exclusively, as the heirs *ex parte paterna,* under the Code, sec. 2420, subsec. 3, if, at the intestate's death, she held as of her original title. The argument in favor of the complainants is, that the conveyance of October 30, 1865,

and the reconveyance of September 3, 1866, worked a change of title, under the circumstances stated in the bill, so that the land must be considered as " acquired," within the meaning of the Code, sec. 2420, subsec. 2, and passed by descent, under that subsection, to the complainants and defendants, in equal moieties, as the heirs of the father and mother in equal degree. The demurrer of the defendants to the bill is intended to raise the issue thus presented.

The general principle upon which the argument for the complainants rests is thus illustrated by Lord Coke : " If," he says, " a man be seized of lands as heir of the part of his mother, and maketh a feoffment in fee, and taketh back an estate to him and his heirs, this is a new purchase, and if he dieth without issue, the heirs of the part of the father shall first inherit." Co. Lit. 12 *b*. " But here," says Mr. Hargrave, in his note on this passage, " Lord Coke must be understood to speak of two distinct conveyances in fee, — the first passing the use as well as the possession to the feoffee, and so completely divesting the feoffor of all interest in the land, and the second regranting the estate to him. For, if in the first feoffment the use had been, expressly limited to the feoffor and his heirs, or if there was no declaration of uses, and the feoffment was not on such a consideration as to raise a use in the feoffee, and consequently the use resulted to the feoffor, in either case he is in of his ancient use, and not by purchase." *Godbold* v. *Freestone*, 3 Lev. 406 ; *Abbot* v. *Burton*, 11 Modern, 181 ; *s. c.*, 2 Salk. 591 ; *Harris* v. *Bishop of Lincoln*, 2 P. W. 138.

The principle thus enunciated is clear enough, but the difficulty is in its application. Of this we have a notable illustration in the first *placitum* of Viner's Abr., tit. "Heir," W. 2, which reads thus : " A man seized of land by descent of the part of the mother gives in tail reserving rent, and dies without issue, the rent shall be to the heir of the part of the father, and the reversion to the heir of the part of the mother, *per* Newton ; to which it was said that the con-

trary is law; and therefore it seems that all shall go to the heir of the part of the father, till it falls in *demesne;* nevertheless, by several, all shall be to the heir of the part of the mother." Plainly, a divided court on that proposition. In *Wimbish* v. *Tailbois*, 1 Plow. 57, we learn from Mountague, C. J., that " if a man has land by descent on the part of his mother, and he makes a feoffment upon condition, and dies without issue, and the heir of the part of the father enters, the heir of the part of the mother shall oust him." " And there," he very pertinently adds, " the common proverb is verified, viz. : *One shall beat the bush and another have the bird."* In *Counden* v. *Clerke,* Hob. 31 *a*, we are further enlightened. " But this has a divers consideration, and upon divers reasons in case of descent, and in case of purchase; for the word ' heir ' is sometimes taken absolutely, and as the Grecians call it ἁπλῶς, or *simpliciter;* sometimes κατα τί or *secundum quid*, or *per accidens*; sometimes *in abstracto*, standing naked by itself, and of itself; and sometimes *in concreto*, clothed with land or rent in respect of which he may be heir — that is not right heir as the word is here." Then, after a few illustrations, it is added: " Nay, more, if I convey lands that I have on the part of the mother, or, in Borough English, to I. S. and his heirs, without consideration, the use shall be void, and so the land shall return again to me, and to my heirs of the mother, or, in Borough English, as before ; for the law doth construe the use of the same in state and quality as the land was. But if I do declare the use to me and my heirs, or upon such feoffment reserve a rent to me and my heirs, it shall go to my heirs at common law, for it is not within the custom, but it is a new thing divided from the land itself." We learn, however, from *Harris* v. *Bishop of Lincoln*, 2 P. W. 138, that Lord Chancellor Macclesfield denied this case in Hobart to be law in the latter proposition ; that the contrary had been determined in 3 Lev. 406 (*Godbolt* v. *Freestone*), and in 2 Salk. 591 (*Abbot* v.

*Burton*), in both of which cases it was solemnly adjudged
that the use, whether expressly declared by the feoffor or
permitted to arise by implication, was the same thing, and
would go to the mother's side. So we find doctors will
differ on these abstruse points, as they do on plain ques-
tions ; either ἁπλῶς, that is, *simpliciter*, or κατα τί, that is, *per
accidens*, and *in abstracto* or *in concreto*, and suitors must
look out accordingly. If I fail in the law of this case, as I
am pretty certain to do, whether it be from simplicity or
by accident, I shall have the consolation of knowing that I
am in very good company.

The deed of the intestate to Turrentine certainly con-
veyed the land in fee, subject to the grantor's right of oc-
cupancy for life, and to the lien reserved for the payment
of the consideration, " a comfortable maintenance and sup-
port " for her. If, now, that deed was free from all defects
which would impair its validity, the grantor's estate passed
out of her. A subsequent reconveyance to her upon a val-
uable consideration would be a new purchase, and she
would have " acquired " the land otherwise than by gift,
devise, or descent from a parent. If, on the other hand, the
original conveyance was for any reason a nullity, or if its
validity were doubtful, and the parties, by way of compro-
mise, agreed to rescind, upon a consideration given, to pre-
vent litigation, a reconveyance would, in either of these
cases, reinvest her " in all her former rights and estates,"
and she would be in " as of her ancient use, and not by
purchase." The bill expressly alleges the transactions to
have been of the former character. The deed of reconvey-
ance rather implies a transaction of the latter character, but
without being so clear and explicit as to effectually annul
the allegations of the bill. Its recitals are consistent with
either hypothesis, if fairly established *aliunde*, although
leaning towards one of them. Under these circumstances,
the demurrer must be overruled, so that all the facts may
be brought before the court.